OPINION
Defendant-appellant Michael Lashon King [hereinafter appellant] appeals the August 29, 2000, Judgment Entry of the Richland County Court of Common Pleas which classified appellant as a sexual predator, pursuant to R.C. 2950.09. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On May 3, 2000, appellant was indicted on one count of attempted rape, in violation of R.C. 2907.02(A)(1)(b) and R.C. 2923.02(A), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). The alleged victims were two girls, ages four and eight. Appellant entered a plea of not guilty to all charges at an arraignment held May 25, 2000.
Subsequently, at a change of plea hearing, on July 13, 2000, the count of attempted rape was dismissed pursuant to a plea agreement. Pursuant to that agreement, appellant pled guilty to the two remaining counts of gross sexual imposition. These two counts involved two different victims. At the plea hearing, the trial court ordered a presentence investigation report [hereinafter PSI]. The trial court further ordered that, as part of the PSI, appellant be interviewed by the forensic diagnostic center.
At the sentencing hearing, held August 24, 2000, the trial court indicated that it had reviewed the PSI. The trial court proceeded to consider appellant's status as a sex offender. The State argued that appellant should be classified as a sex offender due to the age of the victims, the fact that there was more than one victim and that this was not appellant's first involvement with minors. Appellant's counsel responded that while there had been other investigations into whether appellant had molested other children, this was appellant's first conviction for sexually oriented offenses. Consequently, he urged the trial court to find appellant a sexually oriented offender, not a sexual predator.
At the close of the hearing, the trial court classified appellant as a sexual predator, due to the ages of the victims, the fact that the case involved multiple victims, the nature of the offender's sexual activities with the victim, and it's finding that this conduct was part of a demonstrated pattern of abuse. The court then proceeded to sentence appellant to a four year term of imprisonment on each count of gross sexual imposition, to be served concurrently. The court's classification of appellant as a sexual predator was journalized in a Judgment Entry filed August 29, 2000.
It is from the August 29, 2000, Judgment Entry classifying appellant as a sexual predator that appellant brings this appeal, raising the following assignment of error:
 THE STATE FAILED, BOTH IN WEIGHT AND SUFFICIENCY TO MEET ITS BURDEN OF PROVING APPELLANT IS A "SEXUAL PREDATOR" BY THE "CLEAR AND CONVINCING" EVIDENCE STANDARD REQUIRED BY R.C. 2950.09.
Any other facts relative to our discussion of the assignments of error shall be contained therein.
 I
In the sole assignment of error, appellant argues that the State failed to meet its burden of proving appellant is a sexual predator by clear and convincing evidence. See R.C. 2950.09.
A sentencing court must determine whether a sexual offender is a habitual sex offender, a sexual predator or a sexually oriented offender. State v. Williams (2000), 88 Ohio St.3d 513, 518. The definition of a sexual predator is one who "has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E).
It is not challenged that appellant was convicted of sexually oriented offenses. The issue in the case sub judice, is whether there was sufficient evidence to find appellant was likely to commit sexually oriented offenses in the future.
A trial court shall classify an offender as a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. 2950.09(C)(2)(b). Revised Code 2950.09(B)(2) sets forth the relevant factors a trial court is to consider in making its determination:
 [The] judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
Since these factors are provided to guide a trial court to determine if an offender is a sexual predator, it is implicit that these are the factors provided to aid a court in determining if the offender is likely to commit sexually oriented offenses in the future. See State v.Eppinger (2001), 91 Ohio St.3d 158, 163-164, 166.
We review this type of claim under a manifest weight of the evidence, pursuant to State v. Cook (1998), 83 Ohio St.3d 404. See State v.McIntyre (Feb. 1, 1999), Stark App. No. 1997CA00366, unreported. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387 (citing State v. Martin (1983), 20 Ohio App.3d 172,175). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
In the case herein, the trial court relied upon the PSI prepared upon the trial court's order. We note that appellant argues that the PSI was not admitted into evidence by the State. Appellant argues that the record is therefore devoid of any evidence in support of the trial court's finding that appellant is likely to recommit sexual offenses.
This issue was addressed by the Ohio Supreme Court in State v. Cook
(1998), 83 Ohio St.3d 404. In Cook, the appellate court found a sexual predator determination was not supported by the weight of the evidence, in part, because the sole evidence before the trial court was a PSI which was not admitted into the record. However, the Ohio Supreme Court reversed the appellate court and found the determination was not against the manifest weight of the evidence. The Ohio Supreme Court noted that the defendant never objected to the contents of the PSI nor requested that the PSI be made part of the record.[1] Cook, 83 Ohio St.3d at 426. Since the defendant did not object to the trial court's reliance on the PSI, the defendant waived all but plain error. Id. Further, the Cook
Court clearly held that a trial court may rely upon a PSI at a sexual predator hearing.
In this case, appellant did not object nor request that the PSI be made part of the record. Therefore, as in Cook, all but plain error is waived. Further, as in Cook, upon review of the facts, we find no plain error. The PSI was clearly admissible, pursuant to Cook and the trial court was free to rely upon the information contained within. See Cook,83 Ohio St.3d at 426.
The information before the trial court in the case sub judice supported a finding that appellant was a sexual predator. The trial court found the following factors applicable to appellant:
 . . . I do find, however, that he has demonstrated to be a sexual predator. The factors I consider most important are the ages of the victims, in this case four and eight years old; the fact the case involves multiple victims; the nature of the offenders's sexual activities with the victim and whether it was part of a demonstrated pattern of abuse, and it was in this case. Those are the main factors which cause me to conclude that Mr. King is a sexual predator.
TR. 11.
The trial court had the following information before it:
At the time of the offenses, appellant was 21-years of age. The victims in this case were two girls, ages four and eight. The record indicates that the 8-year old victim claimed that she had fallen asleep at her aunt's house while watching television. The victim claimed she was awakened from her sleep by appellant. She claimed that appellant took her panties off and pulled his pants down as well. Appellant then "tried to stick his private up me", where she "pees." The child claimed, however, that "it wouldn't go." The child victim stated that the offender then pulled his pants back up and took her hand by the wrist and put her hand down his pants, making her touch "his privates." After the incident, the victim claimed that the appellant told her not to tell.
Upon initial interview by authorities, appellant denied the allegations, but advised this was not the first time he was accused of something like this. Appellant claimed that he was familiar with this victim, but never touched her. However, while appellant did not elaborate, he did state that he shows kids a "good touch" and a "bad touch."
Subsequently, when appellant was re-interviewed by authorities, appellant stated that he did recall an incident where he was lying beside the victim and she "accidentally" put her hand on his penis. Appellant claimed that he removed her hand.
However, upon interview for purposes of the PSI, appellant admitted, in writing, that the offense was "a very sickening case, I was looking for love, and wanted to feel love, but in the wrong way and persons." Appellant wrote the following:
 Well, all I did was just put her hand down their [sic] and told her to play with it, and we started kissing and I started to put my hand down her panties to play with her, and I had a thought and I stop [sic]. I just asked her not to tell. I told her that I love her, but after I stop I told her sorry [sic]. The only way I feel love is threw [sic] sex, but what made me stop with my victims, the pain I had from my uncle came back and I don't want them to have that pain. I feel bad and I know I need some help. Please help me I don't want to do that again, please help."
During the forensic interview, appellant reported that he offended the victim for approximately one hour to one hour and thirty minutes.
As to the four year old victim, she claimed that appellant touched her between her legs. The victim claimed that she was upstairs in her bedroom getting dressed when appellant came in her room. The child claimed that she was putting on her panties when appellant came in and put his finger on her vaginal area. The child told appellant he better stop or she would tell her "mommy" and her "mommy" would call the police. The child claimed that appellant then left the bedroom.
While this is appellant's first conviction for a sexually oriented crime, appellant has acknowledged that he has been investigated for alleged sexual contact between him and children in the past. Importantly, appellant admitted that when he was 19-years of age, he fathered a child by a 15-year old mother. Further, the forensic evaluation stated that appellant was in another relationship with a 15-year old at the time of the interview.
Lastly, appellant has an extensive criminal record of non-sexual crimes.
In this case, appellant engaged in multiple incidents of sexual abuse. This was not an isolated incident. In addition to the incidents with these two children, appellant has fathered a child by a 15-year old girl. "[There is] overwhelming statistical evidence supporting the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children." State v. Kampfer (Aug. 22, 2001), Lorain App. No. 00CA007745, unreported. As noted by the Ohio Supreme Court in State v. Eppinger, pedophiles constitute a class of offenders with an "especially high rate of recidivism." State v. Eppinger (2001),91 Ohio St.3d 158, 162. The information before the trial court clearly shows that appellant has engaged in sexual acts with children on multiple occasions and is likely to recommit a sexual offense in the future.
In conclusion, we find no plain error. The record supports appellant's classification as a sexual predator.
Appellant's sole assignment of error is overruled.
The judgment of the Richland County Court of Common Pleas is affirmed.
By EDWARDS, P.J., HOFFMAN, J. and WISE, J. concurs
[1] If made part of the record, the PSI would have been kept under seal. R.C. 2951.03(D)(3).
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs to appellant.